## UNITED STATES ex rel. CUNNINGHAM v. MATHUES, U. S. Marshal.*

Circuit Court of Appeals, Third Circuit.
May 17, 1929.

No. 3857.

*Petition for rehearing pending.

J. Elwood Dukes, Benjamin M. Golder, Otto Kraus, Jr., and Ruby R. Vale, all of Philadelphia, Pa., for appellant.

George W. Coles, U. S. Atty., and Howard Benton Lewis, Asst. U. S. Atty., both of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. This is an appeal from an order of the District Court, dismissing a writ of habeas corpus and remanding the relator to the custody of the United States Marshal for removal to the District of Columbia.

On May 18, 1926, a primary election was held in Pennsylvania and William S. Vare received the Republican nomination as a candidate for the United States Senate. At the general election held on November 2, 1926, he was elected United States Senator. Thereafter a petition was presented to the Senate contesting his election on the ground that fraudulent and unlawful practices were used in connection therewith.

On May 19, 1926, the Senate of the United States by resolution 195 created a committee of five members and authorized and instructed it:

"To investigate what moneys, emoluments, rewards, or things of value, including agreements of understandings of support for appointment or election to office have been promised, contributed, made or expended, or shall hereafter be promised, contributed,

expended, or made by any person, firm, corporation, or committee, organization, or association, to influence the nomination of any person as a candidate of any political party or organization for membership in the United States Senate or to contribute to or promote the election of any person as a member of the United States Senate at the general election to be held in November, 1926. Said committee shall report the names of the persons, firms, or corporations, or committees, organizations, or associations that have made or shall hereafter make such promises, subscriptions, advancements, or payments and the amount by them severally contributed or promised as aforesaid; including the method of expenditure of said sums or the method of performance of said agreements, together with all facts in relation thereto. * * *

"The chairman of the committee or any member thereof may administer oaths to witnesses. Every person who, having been summoned as a witness by authority of said committee wilfully makes default, or who, having appeared, refused to answer any question pertinent to the investigation heretofore authorized, shall be held to the penalties provided by Section 102 of the Revised Statutes of the United States."

This section provides that:

"Every person who having been summoned as a witness by the authority of either House of Congress, to give testimony or to produce papers upon any matter under inquiry before either House, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than one thousand dollars nor less than one hundred dollars, and imprisonment in a common jail for not less than one month nor more than twelve months." 2 USCA § 192.

Pursuant to the resolution, the committee held a meeting at Washington in the District of Columbia, on February 21, 1927, at which the relator appeared in obedience to a summons of the committee, but refused to answer certain questions asked by the committee on the ground that they related to his personal business and were not pertinent to the investigation authorized by the Senate.

The relator was thereafter on April 20, 1928, indicted by a grand jury in the Supreme Court of the District of Columbia for refusing to answer the questions which related to his contribution of $50,000 to Mr. Thomas F. Watson, chairman of the city committee of Philadelphia, for use in the primary election, in which William S. Vare was nominated.

The indictment contains six counts. The questions and answers follow:

### First Count.

"Mr. Cunningham: I handed money to Thomas F. Watson $25,000 on the 10th day of April, 1926.

"The Chairman: Where did you get that money?

"Mr. Cunningham: I got that money out of my own private funds.

"The Chairman: How is that?

"Mr. Cunningham: Out of my own private funds.

"The Chairman: Your own private moneys?

"Mr. Cunningham: Yes, sir; my own money; my own money.

"The Chairman: How long had it been your own money?

"Mr. Golder at that time stated an objection, which appears in the record.

"The question was repeated as follows (reading):

"The Chairman: How long had it been your own money?

"Mr. Cunningham: I refuse to answer that question, Senator, as a personal question. It is my own private business."

### Second Count.

"The Chairman: Where did you get this $25,000 you say you gave to Mr. Watson?

"Mr. Cunningham: I refuse to answer that question, I think that is personal."

### Third Count.

"The Chairman: Where were you keeping the $25,000 before you gave it to Mr. Watson?

"Mr. Cunningham: That is another personal question, Senator. I refuse to answer it."

### Fourth Count.

"The Chairman: Did you have it in your pocket when you gave it to him—before you gave it to him?

"Mr. Cunningham: Yes, sir.

"The Chairman: Where did you get it from to put in your pocket?

"Mr. Cunningham: That is a personal question, and I decline to answer it."

### Fifth Count.

"The Chairman: Mr. Cunningham, how long had you had this money in your possession?

"Mr. Cunningham: That is another personal question, and I decline to answer it. It was my own money, and I do not think I should tell the public where I kept it and how I got it, or anything else about it."

### Sixth Count.

"The Chairman: Was this money which you refer to as the $25,000 that you gave to Watson, savings from your salary?

"Mr. Cunningham: That is another personal question. I cannot answer that."

On an affidavit of S. Busha, a warrant was issued and the relator was arrested and brought before Judge Dickinson who appears to have sat in three proceedings: (1) Committing magistrate; (2) motion for warrant of removal; and (3) hearing upon writ of habeas corpus.

As above stated, the writ of habeas corpus was dismissed, the warrant for removal was allowed, and the relator was remanded to the custody of the United States Marshal for removal to the District of Columbia.

An appeal was taken, and the question before us is whether or not probable cause of the relator's guilt is sufficient to justify his removal for trial.

The sole function of the commissioner, judge, or appellate court in removal proceedings is to identify the accused and determine whether or not probable cause has been shown by the Government. The trial court alone has power to adjudge the indictment as a pleading to be either good or bad or to pass finally upon the guilt or innocence of the accused. United States ex rel. Tassell v. Mathues (C. C. A.) 11 F.(2d) 53; Swan v. United States (C. C. A.) 23 F.(2d) 148; Tinsley v. Treat, 205 U. S. 20, 27 S. Ct. 430, 51 L. Ed. 689; United States ex rel. Hughes v. Gault, 271 U. S. 142, 46 S. Ct. 459, 70 L. Ed. 875; Morse v. United States, 267 U. S. 80, 45 S. Ct. 209, 69 L. Ed. 522.

The identity of the accused is admitted. Has the government shown probable cause?

In order to show probable cause a certified copy of the indictment was offered in evidence. This in itself raises a presumption of probable cause. It is prima facie evidence thereof, and, if it charges a crime, it alone is sufficient to justify an order of removal unless this prima facie evidence is overcome, which may be done by its own terms when they fail to set forth a crime. United States ex rel. Tassell v. Mathues, supra; Swan v. United States, supra; Morse v. United States, supra.

The entire evidence constituting the alleged crime with which the relator is charged is contained in the indictment. It consists in the refusal to answer the questions asked. The inquiry related entirely to the primary election. If the questions were pertinent to the investigation authorized by the Senate, probable cause has been established, but, if they were not pertinent, it has not been established. We recently considered the pertinency of these very questions in the case of United States ex rel. Cunningham v. Barry (C. C. A.) 29 F.(2d) 817[1] and there said:

"After full consideration, we are of opinion no facts, reasons, or grounds have been shown or now appear which make pertinent the inquiry into how Cunningham made the money which he admits he contributed. That a situation might arise where the facts would show such questions were pertinent goes without saying, but under the present situation and no such facts appearing, we hold Cunningham was justified in declining to answer the questions asked him, and that this warrant, whose only foundation is alleged contempt for refusal to so answer, has no support in law. Accordingly we hold the court below was in error, and the record will be remanded, with instructions to discharge the petitioner."

The prima facie evidence of probable cause which the indictment established is overcome by its own terms in failing to charge a crime.

The order is, therefore, reversed and the record remanded, with instructions to discharge the relator.

WOOLLEY, Circuit Judge. The judgment of the court in this case follows—as clearly it must—the judgment and reasoning in United States ex rel. Cunningham v. Barry (C. C. A.) 29 F.(2d) 817. With like consistency I record my dissent.

---

[1] As the opinion in that case contains the testimony in full, we, by reference, make it a part of this opinion and thus avoid repetition.

